# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| AUTRY MILTON, | * | |
| Plaintiff, | * | |
| vs. | * | CV 210-119 |
| LTD FINANCIAL SERVICES, | * | |
| Defendant. | * | |

### ORDER

Presently before the Court is Defendant LTD Financial Services' Motion for Summary Judgment and Attorney's Fees. Upon due consideration, Defendant's motion for summary judgment is **GRANTED** in part and **DENIED** in part; Defendant's request for attorney's fees is **DENIED**.

### BACKGROUND

In mid-2009, Citibank retained Defendant LTD Financial Services to collect an unpaid credit account belonging to Plaintiff Autry Milton. Defendant allegedly sent a letter to Plaintiff concerning the credit account on June 25, 2009, which

1

Plaintiff denies having received. Defendant sent an additional letter concerning the same account on July 27, 2009. On August 10, 2009, Defendant received two letters from Plaintiff's counsel, demanding that Defendant "obtain validation of the alleged indebtedness." Compl. ¶ 3. Rather than comply with Plaintiff's request, Defendant simply ceased all collection activity associated with the account and returned it to Citibank.

Plaintiff filed this suit against Defendant in the Magistrate Court of Glynn County, Georgia, claiming that Defendant's failure to validate Plaintiff's alleged indebtedness amounted to a violation of the Fair Debt Collection Practices Act (FDCPA), codified at 15 U.S.C. § 1692, *et seq*. Defendant removed the case to this Court on July 29, 2010, and filed this motion for summary judgment and attorney's fees on August 17, 2010.

On September 10, 2010, Plaintiff filed an amended complaint, adding Counts II, III, and IV to the original complaint. In Count II, Plaintiff alleges that "Defendant violated the [Fair Credit Reporting Act] by obtaining Experian and Transunion credit reports on the Plaintiff prior to the time the Defendant contends it was hired to collect a Citibank account." Am. Compl. ¶ 9. In Count III, Plaintiff claims that Defendant violated the FDCPA by making various false

2

representations associated with its effort to collect Plaintiff's account. Id. at ¶ 12. Finally, Plaintiff alleges in Count IV that Defendant "violated the Plaintiffs (sic) privacy rights under Georgia Law by violating his rights of privacy by obtaining his credit reports without legal authority, and also by filing a document in this Court revealing the identifying information about the Plaintiff." Id. at ¶ 14.

Rather than challenging the propriety of Plaintiff's amendment, Defendant moved for leave to supplement the motion for summary judgment, stating that it "prefers to simply address the issues and dispose of them on summary judgment." Dkt. No. 22, at 1.

**STANDARD OF REVIEW**

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and draw all inferences in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the movant

3

must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but must come forward with "specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56(e)(2).

**DISCUSSION**

**1. Count I: Failure to Validate Alleged Debt**

In the original complaint, Plaintiff alleges that Defendant's decision to cease debt collection activities, rather than validate the debt with Citibank upon Plaintiff's request, constitutes a violation of the FDCPA. The relevant part of the FDCPA states:

> If the consumer notifies the debt collector in writing . . . . that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification . . .

15 U.S.C. § 1692g(b). While case law interpreting § 1692g(b) is sparse within the Eleventh Circuit, the Eleventh Circuit has

AO 72A (Rev. 8/82)

cited with approval Smith v. Transworld Sys., Inc., 953 F.2d 1025 (6th Cir. 1992). See Shimek v. Weissman, Nowack, Curry & Wilco, P.C., 374 F.3d 1011, 1014 (11th Cir. 2004). In Smith, the Sixth Circuit explained that a debt collection agency

> did follow the guidelines of 15 U.S.C. § 1692g(b) by ceasing and desisting from collection of the debt. Because defendant ceased collection activities, defendant was not obligated to send a separate validation of the debt to plaintiff.

953 F.2d at 1031.

A collection agency may thus comply with the FDCPA by ceasing all collection activities in response to a request for validation of an alleged debt. The parties in this case do not dispute that Defendant did just that upon receipt of Plaintiff's request. As a result, Plaintiff's claim that Defendant violated the FDCPA by failing to validate Plaintiff's debt fails as a matter of law.

### 2. Count II: Obtaining Credit Reports with Improper Purpose in Violation of the Fair Credit Reporting Act (FCRA)

The FCRA imposes civil liability on consumer reporting agencies and users of information that obtain credit reports of consumers for purposes not specified in § 1681b. See 15 U.S.C. §§ 1681n-o; see also Jones v. TT of Longwood, Inc., No. 6:09-cv-651, 2006 WL 2789140, at *5 (M.D. Fla. Sept. 26, 2006). Defendant indicates that it was permitted to obtain Plaintiff's credit reports under the following provision of the FCRA:

AO 72A
(Rev. 8/82)

> [A]ny consumer reporting agency may furnish a consumer report under the following circumstances and no other:
>
> (3) To a person which it has reason to believe—
>
> > (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the . . . collection of an account of [] the consumer;

15 U.S.C. § 1681b(a)(3)(A); see Dkt. No. 25, at 5.

Plaintiff alleges, however, that Defendant obtained reports on Plaintiff's credit without a purpose permitted by the FCRA because the affidavit of Dawn Harris, Defendant's Director of Compliance, indicates that Defendant accessed Plaintiff's credit reports before it was hired by Citibank to collect on Plaintiff's account. Indeed, Harris's affidavit states that Citibank hired Defendant on July 24, 2009, nearly three weeks after Defendant concedes it first accessed Plaintiff's credit report on July 2, 2009. See Harris Aff. 2, Aug. 11, 2010; see also Dkt. 25, at 3. Defendant, however, has subsequently submitted a supplemental affidavit, purporting to correct what it characterizes as an "error." See Harris Supplemental Aff. 2, Oct. 25, 2010. Harris now claims that Citibank actually retained Defendant on June 23, 2009, before Defendant accessed Plaintiff's credit report on July 2. Id.

The legal question for the purposes of this motion is whether the affidavits create a genuine issue of material fact

rendering summary judgment inappropriate at this time. "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Dixon v. The Hallmark Cos., Inc., No. 10-10047, 2010 WL 4983663, at *3 (11th Cir. Dec. 9, 2010)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

In this case, a reasonable jury could find that Citibank retained Defendant on July 24, as stated in Harris's original affidavit, rather than June 23, as claimed in Harris's supplemental affidavit. First, a jury may find the timing of the supplemental affidavit suspect. Defendant corrected Harris's original affidavit only when it appeared that the error might present a significant obstacle to Defendant's motion for summary judgment. Second, the error is not a minor typographical error that might involve a single misspelled word or mistyped digit. Rather, Harris purportedly "overlooked" the fact that the original affidavit stated that Citibank retained Defendant on July 24, 2009, as opposed to the correct date, June 23, 2009. Both the month and the day were supposedly incorrect in the original affidavit. Third, Defendant offers no substantive explanation for the error in Harris's first affidavit. Harris simply states in the supplemental affidavit that she "overlooked" the incorrect July 24, 2009 date in her first affidavit. See Harris Supplemental Aff. 2.

7

Defendant has submitted evidence that supports its contention that the date of retention in Harris's original affidavit was a simple error, such as an internal business record stating that it was retained to collect Plaintiff's account on June 23, see Dkt. No. 25, Ex. A, as well as a letter dated June 25, 2009, from Defendant to Plaintiff concerning Plaintiff's account. See Dkt. No. 12, Ex. A. The Court also notes that Plaintiff never alleges that Defendant was actually retained on July 24, 2009. Indeed, Plaintiff consistently avoids alleging in plain terms that Defendant was not retained on June 23, only pointing out the fact that Harris's affidavit states that Defendant was retained on July 24. See Am. Compl. ¶ 9; see also Dkt. No. 26 ¶ 11.

Regardless, the Court declines to "undertake credibility determinations or weigh the evidence" at this stage of the proceedings. Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1237 (11th Cir. 2010). A reasonable jury, considering the credibility of the affidavits and other evidence at issue, could find for Plaintiff as to the date of retention. As a result, a genuine issue of material fact exists, such that summary judgment is inappropriate as to this claim.

AO 72A
(Rev. 8/82)

### 3. Count III: False Representations in Violation of the FDCPA

Plaintiff alleges that Defendant violated the FDCPA by (1) representing that it would obtain validation of the alleged debt upon request, even though it had no intention of doing so, and (2) "stating that the Plaintiff owed a Citibank account in excess of the amount that the Defendant knew the account balance to be." Am. Compl. ¶¶ 12-13. Although the amended complaint does not specify which provision of the FDCPA Defendant allegedly violated, Plaintiff likely alleges a violation of 15 U.S.C. § 1692e. Section 1692e enumerates a number of prohibited practices and states, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

Plaintiff's claim that Defendant made a false representation by stating that it would validate debts upon request without having any intention to do so clearly fails. Defendant's June 25, 2009, letter to Plaintiff explaining that Plaintiff could request a validation of the alleged debt states, "IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT . . . THIS OFFICE WILL OBTAIN VERFICATION." Dkt. No. 7, Ex. A. Plaintiff's claim, in essence, is that Defendant sent the letter stating that Defendant would obtain validation upon request,

intending all along to cease collection activity, rather than obtain validation, upon receiving such a request. But in ceasing all collection activity upon receiving Plaintiff's validation request, Defendant merely followed a course of action explicitly permitted by the FDCPA. See Jang v. A.M. Miller and Assoc., 122 F.3d 480, 484 (7th Cir. 1997)("[W]e hold that a collection letter [setting forth debt validation procedures] cannot be false, misleading or deceptive merely because the collection agency always chooses one statutorily allowed path (ceasing all collection activity) over the other (providing debt verification)."). Plaintiff's claim here thus fails.

Plaintiff also alleges that Defendant overstated Plaintiff's debt to Citibank in seeking to collect Plaintiff's account. Defendant's response does not dispute that it overstated Plaintiff's debt but argues instead that (1) Defendant fails to present evidence of Defendant's intent to mislead or deceive and (2) Defendant failed to comply with the FDCPA's procedure for disputing debts that must precede a lawsuit. Dkt. No. 25, at 11. Defendant's argument that Plaintiff fails to present evidence of Defendant's intent to mislead or deceive is unavailing. Most courts, including the Eleventh Circuit, have treated the FDCPA as a strict liability statute, such that no evidence of intent to mislead or deceive is necessary. See Owen v. I.C. Sys., Inc., No. 09-15464, 2011 WL

43525, at *5 (11th Cir. Jan. 7, 2011)("The FDCPA typically subjects debt collectors to liability even when violations are not knowing or intentional."); see also In re Avery, 434 B.R. 895, 905 (M.D. Ala. 2010); Hepson v. J.C. Christensen and Assoc., Inc., No. 8:07cv-1935, 2008 WL 4833097, at *4 (M.D. Fla. Nov. 5, 2008). Under this approach, Defendant's argument that Plaintiff must present evidence of intent fails.

Defendant's argument that Plaintiff failed to follow the FDCPA's requirements for disputing a debt also fails at this stage of the proceedings. Courts have generally held that prior to filing suit against a debt collection agency, debtors seeking to dispute their debts should employ the FDCPA's debt validation procedure, which allows debtors to require debt collectors to validate the debt with the original creditor before collection activities can resume. See Bleich v. Revenue Maximization Grp., Inc., 233 F. Supp. 2d 496, 501 (E.D.N.Y. 2002)("[A] consumer alleging that a debt referenced in a collection letter is not valid, is required to follow the clear and orderly procedure set forth in the FDCPA. Such a consumer may not institute an immediate lawsuit alleging that the letter violates the FDCPA."); see also Palmer v. I.C. Sys., Inc., No. C-04-03237, 2005 WL 3001877, at *5 (N.D. Cal. Nov. 8, 2005) "[W]here . . . it is undisputed that the consumer never contacted the collector to contest the debt before the final collection attempt,

11

plaintiff cannot assert a cause of action under the FDCPA solely based upon the debt collector's attempt to collect an invalid debt.").

Defendant contends that Plaintiff failed to utilize the FDCPA's debt validation procedure, such that the Plaintiff is barred from asserting a claim under the FDCPA. Specifically, Defendant argues that Plaintiff failed to demand validation within thirty days of receiving notification of the collection, which is required under § 1692g(b) to trigger the debt validation procedure. In so arguing, Defendant notes that the notification was sent on June 25, 2009, and that Plaintiff did not demand validation until August 9, 2009. See Dkt. No. 7, Exs. A-B. Although Defendant is correct that more than thirty days elapsed between the dates that Defendant purportedly sent the initial notification and Plaintiff responded with the demand, the thirty-day time limitation for a debtor to demand validation begins on the date of *receipt* of the initial notification, not the date the initial notification was sent. See Turner v. Universal Debt Solutions, Inc., 436 B.R. 153, 158 (M.D. Ala. 2010)(finding that debt collection agency violated § 1692g(b) by requiring debtor to dispute debts within thirty days from the date of the letter, rather than thirty days from debtor's receipt of the letter). Because neither party presents evidence as to the date of receipt of the initial correspondence, a

genuine issue of material fact remains as to whether Plaintiff properly utilized the debt validation procedure prior to filing suit. As a result, summary judgment is inappropriate as to this claim.

### 4. Count IV: Violation of Plaintiff's Privacy Rights

Plaintiff claims that Defendant violated "Plaintiffs (sic) rights under Georgia Law by violating his rights of privacy by obtaining his credit reports without legal authority, and also by filing a document in this Court revealing the identifying information about the Plaintiff, in violation of the Rules of this Court." Am. Compl. ¶ 14. Defendant, in response, asserts "that there is no issue of material fact regarding the legality of obtaining [Plaintiff's] credit reports." Dkt. No. 25, at 6. Contrary to Defendant's assertion, as the analysis of Count II indicates, a genuine issue of material fact exists as to whether Defendant accessed Plaintiff's credit reports in violation of the FCRA. Defendant's argument here is thus unavailing.

### 5. Defendant's Request for Attorney's Fees

Defendant requests that the Court award attorney's fees because, according to Defendant, Plaintiff pursued a frivolous claim under the FDCPA, knowing that Defendant had ceased all collection activities after Plaintiff demanded validation of the debt. Dkt. No. 7, at 8. Since Defendant submitted its request for attorney's fees, however, Plaintiff has filed an amended

AO 72A
(Rev. 8/82)

complaint with three additional counts, all of which contain one or more claims that survive this motion for summary judgment. The Court thus declines to award attorney's fees to Defendant at this time.

**CONCLUSION**

For the reasons stated above, Defendant LTD Financial Services' Motion for Summary Judgment is **GRANTED** as to Count I, and **DENIED** as to Counts II, III, and IV. Additionally, Defendant's request for attorney's fees is **DENIED**.

**SO ORDERED**, this 25th day of January, 2011.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA